IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN E. CARROLL,              ) | |
| ) | No. 19-cv-7412 |
| Plaintiff,        ) | |
| ) | Judge Jorge L. Alonso |
| v.                    ) | |
| ) | |
| CITY OF OAK FOREST, and Illinois ) | |
| municipal corporation, OAK FOREST ) | |
| BOARD OF FIRE AND POLICE ) | |
| COMMISSIONERS, and DAVID NAGEL, ) | |
| ) | |
| Defendants.         ) | |

## Memorandum Opinion and Order

Plaintiff Brian Carroll filed this lawsuit alleging violations of 42 U.S.C. § 1983 and the Illinois Whistleblower Act, 740 ICLS 174/1 *et seq.*, for retaliation because of his political activities while he was employed as a part-time firefighter with the City of Oak Forest. Defendants move for summary judgment on both counts. For the reasons below, the Court grants Defendants' motion.

## Background

**I.   The Parties' Statements of Material Fact**

Before the Court recites the applicable background facts of this case, it addresses the parties' dispute over their statements of material fact. Local Rule 56.1 outlines the requirements for the introduction of facts the parties would like the Court to consider in conjunction with a motion for summary judgment. The Court enforces this rule strictly. *See FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we

have consistently upheld the district court's discretion to require strict compliance with those rules.").

At the summary judgment stage, a party cannot rely on allegations; he must put forth evidence. Fed. R. Civ. P. 56(c)(1)(A); *see also Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the 'put up or shut up' moment in a lawsuit,' summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citations to admissible evidence going beyond the complaint's allegations, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

Here, the parties argue over several of each other's purported facts. Defendants, for example, argue that the Court should strike a host of Carroll's responses to their statements of facts because the responses are argumentative, fail to point to contrary factual evidence, or cite to evidence that does not support Carroll's response. Defendants further argue that the Court should strike certain of Carroll's additional facts because many of them consist of improper conclusions that mischaracterize evidence, are wholly unsupported by the cited evidence, or rely on individuals without actual knowledge of said fact. Carroll, on the other hand, argues that the Court should not strike his additional facts and responses because he properly responds to Defendants' facts and his additional facts are supported by the evidence and not subject to any evidentiary exclusions.

The Court has reviewed both parties' statements of fact, corresponding responses, and supporting evidence. Many of the parties' responses do not necessarily dispute the stated fact, but instead offer further elaboration or argument to downplay the assertion's weight. (*See, e.g.*, Pl.'s Response to Defs.' SOF ¶¶ 10, 12, 18, 20, 26, 28, 32-33, 39, 45-46, 50, 52, 54, 56, 65-66, 69-70, 72, 75, -76, 79-80c, ECF No. 119; Defs.' Response to Pl.'s SOF ¶¶ 3, 4,-9, 12-13, 15-21, 22-26, ECF No. 128.) The Court deems these facts admitted to the extent the response does not offer actual contradictory evidence. Furthermore, the Court denies each party's request to strike certain factual assertions and overrules the corresponding objections. The following recitation of facts reflects the Court's view of the material facts properly supported by the record; or, in the case of properly disputed facts, facts reasonably construed in the non-movant's favor.

## II.     Factual Background

The City of Oak Forest hired Brian Carroll as a part-time firefighter in August 2003. In 2005, Carroll and his father, Edward Carroll, campaigned for a candidate running against JoAnn Kelly, one of the mayoral candidates for the City of Oak Forest at that time. Edward Carroll was an outspoken member of the Oak Forest political community who served as an alderman and a three-term commissioner of the Oak Forest Board of Fire and Police Commissioners (hereafter the "Board"). The Board, comprised of three commissioners, is responsible for recruiting, testing, hiring, disciplining, and terminating firefighter candidates and firefighters in Oak Forest. The acting mayor is responsible for appointing the Board commissioners when a term expires, as well as appointing individuals for the Fire Chief and Deputy Fire Chief positions within the Oak Forest Fire Department. During the 2005 election, Kelly saw Carroll and his father going door-to-door and actively campaigning in favor of Kelly's opponent in one of the Oak Forest wards.

Kelly eventually won the 2005 election. In 2006, Edward Carroll's term on the Board expired, and the Kelly did not reappoint him.

Carroll claims that, because of his campaigning and political affiliations, he has been harassed and retaliated against while working as a part-time firefighter with the Oak Forest Fire Department. To wit, he claims that he was subjected to general harassment within the department; made fun of for his reaction to his mother passing away in 2006; threatened with "blackballing," termination, and other reprimands; not allowed to join the South Suburban Emergency Response Team; refused accommodations for light-duty work after an injury in 2019; and refused additional hours for part-time firefighters in the department in 2019.

### A. Illinois Municipal Code

Over the years, Carroll has tried several times to become a full-time firefighter with the Oak Forest Fire Department. Under Illinois law, Oak Forest must hire full-time firefighters from a pool of candidates on an "eligibility list." *See* 65 ILCS 5/10-1-7.1. To establish an eligibility list, Oak Forest periodically holds firefighter exams and must issue an initial eligibility list within 60 days of the exam. At some point the eligibility list expires, although it can be extended, and the municipality conducts another exam to create a new eligibility list. Applicants cannot be examined on their political opinions or affiliations.

In 2018, the Illinois Municipal Code stated that no person over the age of thirty-five was eligible to take an examination to become a full-time firefighter unless the person had previous employment status as a firefighter in the regularly constituted fire department of the municipality. The statute further defined "firefighter" as:

> [A]ny person who has been prior to, on, or after the effective date of this amendatory Act of the 97th General Assembly appointed to a fire department or fire protection district or employed by a State university and sworn or commissioned to perform firefighter duties or paramedic duties, or both, except

that the *following persons are not included: part-time firefighters*; auxiliary, reserve, or voluntary firefighters, including paid-on-call firefighters; clerks and dispatchers or other civilian employees of a fire department or fire protection district who are not routinely expected to perform firefighter duties; and elected officials.

65 ILCS 5/10-1-7.1 (effective August 22, 2017 to August 22, 2019) (emphasis added).

The statute provided, however, three exceptions to the age limit restriction. The age limit did not apply to:

(1) any person previously employed as a full-time firefighter in a regularly constituted fire department of (i) any municipality or fire protection district located in Illinois, (ii) a fire protection district whose obligations were assumed by a municipality under Section 21 of the Fire Protection District Act, or (iii) a municipality whose obligations were taken over by a fire protection district,

(2) any person who has served a municipality as a regularly enrolled volunteer, paid-on-call, or part-time firefighter for the 5 years immediately preceding the time that the municipality begins to use full-time firefighters to provide all or part of its fire protection service, or

(3) any person who turned 35 while serving as a member of the active or reserve components of any of the branches of the Armed Forces of the United States or the National Guard of any state, whose service was characterized as honorable or under honorable, if separated from the military, and is currently under the age of 40.

65 ILCS 5/10-1-7.1 (effective August 22, 2017 to August 22, 2019).

**B. 2005-2014 Firefighter Exams**

In 2005 or 2006 (the record is not clear about which), Carroll tested to become a full-time firefighter with the City of Oak Forest but failed to include a required letter in his application. As a result, the Board deemed his application incomplete. In 2009, the Board held another full-time firefighter exam, but Carroll did not take the exam due to an injury. In 2014, Carroll again tested to become a full-time firefighter. Before the test's written portion, Carroll claims that David

5

Nagel, who was a Board commissioner at that time, spoke to him and told him that he would never be first on the eligibility list. Carroll failed to pass the 2014 exam's written portion.

At the time he took the 2014 exam, Carroll was over the age of thirty-five, was not a member of the active or reserve armed services, and was not employed as a full-time firefighter for another fire department. At that time, Oak Forest had used full-time firefighters for longer than five years. Despite these facts, Carroll still sat for the 2014 exam.

### C. Eligibility Lists

Carroll raised issues with the Oak Forest eligibility lists being outdated on two specific occasions. The first was in May of 2012. Carroll raised the issue with Terrence Lipinsky, who served as the Oak Forest Fire Chief from 2008 to 2014. Carroll says that he spoke to Lipinsky about the eligibility list and the fact that the department kept extending the lists and failing to post them in a timely manner. Lipinsky advised Carroll that if he filed a complaint, he would be blackballed by the department and would never become a full-time firefighter. According to Carroll, Lipinsky did not threaten him, but merely stated in a "very matter of fact" tone that he knew "these guys" and if "they blackball you, you will never be a full-time firefighter in this town." (Dep. of Brian Carroll at 175:12-15, ECF No. 107-4.)

The second time Carroll raised an issue with the eligibility list was in April 2014. He spoke to David Griffin about the department needing to hold another firefighter exam. David Griffin became Fire Chief for the City in June of 2014 and held that position for two years. At the time of this conversation, Griffin occupied the Deputy Chief position with the Fire Department. Carroll says that he asked what he had to do to get the department to hold another exam. Griffin responded by verbally threatening to terminate Carroll if he, or his father, pursued the issue any further or attempted to pursue the issue outside the department.

### D. 2018 Firefighter Exam

In 2018, Oak Forest had another firefighter exam and Carroll again tried to test to become a full-time firefighter. This firefighter exam was administered by a third-party agency. After Carroll dropped off his application, the testing company informed Wallace Blatchford, one of the Board's commissioners, that Carroll was applying but over the age of thirty-five. After being contacted by the testing company, Blatchford reached out to an attorney from the Illinois Police and Fire Commission Association to obtain advice on whether Carroll was eligible to sit for the exam. The attorney advised Blatchford that Carroll was not eligible under Illinois law and did not meet any of the exceptions for individuals under thirty-five years old. A receptionist for the testing company eventually called and left Carroll a voicemail telling him that he was not eligible to sit for the exam because he exceeded the age limit.

Carroll claims that the Board had a history of not complying with or enforcing this particular law. For instance, also in 2014, The Board allowed Kurt DeGroot, another part-time firefighter, to sit for the exam. DeGroot, who was over the age of thirty-five at the time, spoke with Commissioner Joseph Conway, who also reached out to the same attorney with the Illinois Police and Fire Commission Association, and informed DeGroot that he was able to sit for the exam. The City eventually hired DeGroot as a full-time firefighter.

### E. 2020 Termination.

On March 12, 2020, Carroll injured his right arm. As a result of the injury, he could not work and received workers' compensation benefits. Beginning in September 2020, the City enacted a new personnel policy, codified in Chapter 5 § I, 3 of the Oak Forest Personnel Policy Manual, which states, "If after one year from the date of injury the employee is still unable to return to full duty, the employee will be deemed permanently disabled and their position will no

7

longer be held open." Defs.' SOF ¶76, ECF No. 107. As of May 2021, Carroll had not returned to work for over one year. The City terminated Carroll's employment on May 5, 2021, citing its personnel policy.

## Standard of Review

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in the non-moving party's favor. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## Discussion

Carroll filed a two-count complaint alleging a First Amendment retaliation claim under 42 U.S.C. § 1983 and a state law claim under the Illinois Whistleblower Act ("IWA"), 740 ICLS 174/1. Defendants move for summary judgment on both counts. The Court addresses each in turn.

I.   **First Amendment Retaliation.**

To prevail on his First Amendment claim, Carroll must show that: (1) he engaged in a protected activity, (2) he suffered a deprivation likely to deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021). The Court applies a burden-shifting analysis to determine whether Carroll's First Amendment rights have been violated. *Bless v. Cook County Sheriff's Office*, 9 F.4th 565, 571 (7th Cir. 2021).

If the plaintiff satisfies the three required elements, then the burden shifts to the defendant to rebut the causal inference with evidence showing that it would've taken the same action without any retaliatory motive. *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009); *Hasan v. U.S. -Dep't of Labor*, 400 F.3d 1001, 1005-06 (7th Cir. 2005). If the defendant provides legitimate, non-retaliatory reasons for his actions, then the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and the real reason was retaliatory animus. *See, e.g.*, *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012); *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379.

Defendants do not dispute that Carroll can establish the first two elements. The evidence shows that he campaigned for an individual running for political office, a quintessential protected activity, *see Heffernan v. City of Paterson*, 578 U.S. 266, 270 (2016), and that the City never promoted him to the rank of a full-time firefighter based on his inability to take/pass the exam,

9

which Carroll argues was based on pretextual reasons. The Court, therefore, zeros in on the motivating factor element.

Establishing this element requires evidence of a "causal connection… show[ing] 'that the protected activity and the adverse action are not wholly unrelated.'" *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)). Circumstantial evidence can satisfy a plaintiff's burden if a trier of fact can infer retaliation. *Greengrass v. Int'l Monetary Sys.*, 776 F.3d 481, 486 (7th Cir. 2015). "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009).

A. Acts before 2017

Carroll claims that he was subjected to a number of retaliatory acts during his eighteen-year employment with the Oak Forest Fire Department. These acts include the following: he was made fun of for his reaction to his mother's passing, he received disparaging comments about him leaving the police academy, he was subjected to general harassment, and commissioner Nagel intentionally "rattled" him before the 2014 exam which caused him to fail the written portion.

First, Defendants make the point that any claims related to these actions are time-barred under the applicable two-year statute of limitations for § 1983 claims. *See Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) ("Claims brought under § 1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred…In Illinois the statute of limitations for personal-injury actions is two years from when the cause of action accrued") (internal citations omitted). On this point, the Court agrees. Each of

these events involved different individuals occurring at different times. And because Carroll would have known of his injury at the time that each act occurred, *see Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 419 (2005), any claims for relief based on retaliatory acts that pre-date 2017 are time-barred, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (retaliatory adverse employment decisions are discrete acts and only actionable if they "'occurred' within the appropriate time period"); *Zimny v. Cook County Sheriff's Office*, Case No. 12-cv-5963, 2014 WL 4555302, at *3 (N.D. Ill. Sept. 15, 2014) (holding that plaintiff's claims related to events two years before complaint was filed were time barred because plaintiff knew of injury at time of retaliatory act); *Barth v. Vill. of Mokena*, Case No. 03-cv-6677, 2006 WL 862673, at *23-24 (N.D. Ill. Mar. 31, 2006) (considering discrete acts of First Amendment retaliation falling within two-year statute of limitations).

  Even if the Court reached the merits, however, Carroll does not come forward with sufficient evidence to sustain a First Amendment claim based on the alleged pre-2017 acts of retaliation. For starters, his claim about general harassment is too vague to survive summary judgment. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (party must show evidence it has that would convince trier of fact to accept its version of events); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 976 (7th Cir. 2020) (affirming summary judgment because "[p]laintiffs here have not gone beyond the pleadings and supported their claims with the necessary evidence").

  What's more, there is no evidence in the record that any of the Defendants or their employees made fun of Carroll's response to his mother's passing. To the extent Carroll's mother's passing came up in any conversation, the record only shows that Nagel asked Edward

Carroll on his last day as commissioner what happened to Carroll at the police academy because he quit after one day. Edward Carroll that told Nagel that Carroll left to deal with his mother's medical issues and that Carroll's mother had passed away. But Nagel never brought up his mother in this conversation. *See* Dep. of Brian Carroll at 152:5-22, ECF No. 107-4. In addition, this is the same conversation where Carroll claims that Nagel made disparaging comments about him leaving the police academy. But even assuming this remark constitutes a disparaging comment, which is questionable given that Nagel merely asked what happened at the academy, there is no evidence that Nagel directed this comment at Carroll or that he made it because of Carroll's political activity. *See* Dep. of Edward Carroll at 51:12-16, ECF No. 107-2. Accordingly, Carroll has not put forth sufficient evidence to sustain a retaliation claim based on this isolated comment.

Likewise, the record does not demonstrate any retaliation related to the 2014 firefighter exam. Any such claim suffers from a causation deficiency because the Board allowed Carroll to sit for the exam and he did not pass it because he failed the written portion. He does not dispute that he failed the written portion or assert that the Board purposefully failed him because of his political activities. Instead, he claims that comments directed toward him by Nagel "rattled" him and prevented him from passing the written portion of the test. But the Court finds that no reasonable juror could infer that he failed to pass the exam because of Nagel's comment, even if the comment was rude or disparaging. *See Riley v. City of Kokomo*, 909 F.3d 182, 192 (7th Cir. 2018) (declining to draw an unreasonable inference at summary judgment).

Further, to the extent that Carroll argues that this statement is independently actionable, the Court finds this comment to be precisely the type of isolated, trivial harassment that would not deter a person of ordinary firmness from expressing their political beliefs because of it. *See*

*Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989); *see also Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 917 (N.D. Ill. 2010) (holding that "trivial harms, petty slights, [and] minor annoyances" are not actionable under First Amendment, though a campaign of petty harassments may be actionable under the First Amendment). As such, any claim based on this comment also fails.

### B. Whether Defendants knew of Carroll's political activities.

To prove that a public employee's protected speech motivated retaliation, as required for a free speech retaliation claim, the plaintiff must show that the defendants knew of the protected speech. *McGreal v. Village of Orland Park*, 850 F.3d 308, 313 (7th Cir. 2017). Here, the parties dispute whether Defendants knew of Carroll's campaigning activities.

Defendants argue that any actions against Carroll were not based on his political activities because the Defendants did not know about his protected speech. Carroll responds that it is not believable that Defendants or their employees didn't know of his political activities because his political involvement was well-known in the Fire Department. Carroll cites the fact that the Board's commissioners and other department positions are appointed by the mayor, implying that these individuals inherently knew about the different political factions in Oak Forest. Carroll also argues that some of the Board's commissioners actively campaigned for certain candidates during the 2005 election by, among other things, placing signs in their yards.

The Court finds that Carroll has not presented sufficient evidence to infer that Defendants knew about his political activities in 2005. Carroll's argument that the Board knew about his political affiliations because they were well-known within the fire department is simply too speculative. Inferences supported only by speculation or conjecture will not defeat a summary judgment motion. *See Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017); *Harper v. C.R.*

13

*England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). Furthermore, there is no evidence that any of the Defendants' employees saw, discussed, or heard about Carroll's political activity in 2005. Moreover, it is undisputed that the commissioners were not involved in the Fire Department's day-to-day operations. Thus, even if Carroll's affiliations were known throughout the department, that is no guarantee that the Board or its commissioners knew of it since they were not privy to the department's daily operations.

The same holds true for Carroll's argument that the commissioners knew of his activity because the mayor appointed them to their positions. Just because the commissioners or other individuals occupied a politically appointed position, it does not follow that they knew about the mayoral candidates or their supporters. Without more, this type of speculative inference cannot withstand summary judgment.

Carroll identifies other alleged connections, but these suffer from the same defect. In his response, for example, Carroll summarily concludes that he presents sufficient circumstantial evidence to put Defendants' and their employee's knowledge in dispute by citing to some of his responses to Defendants' statement of material facts. But he fails to elaborate on how any of these facts establish the connection between Defendants' knowledge and Carroll's political activity. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). In fact, many of these alleged facts are similar to those above that the Court found insufficient. *See, e.g.*, Pl.'s Response to Defs.' SOF ¶¶ 28 (Beatty appointed by mayor); ¶ 23-24 (Conway appointed by mayor, ran for Oak Forest Park District), ECF No. 119.

But even considering these facts, these connections are too remote to reasonably infer that Defendants knew of Carroll's political expression in 2005. For instance, Carroll claims that

14

Nagel spoke to his father about Carroll leaving the police academy and made a comment to Carroll at the 2014 firefighter exam about him never being number one on the eligibility list. *Id.* at ¶¶17-18. But this doesn't establish that Nagel knew of Carroll's protected expression or suggest as much as an inference that Nagel possessed this knowledge.

Even more remote, Carroll argues that commissioner Blatchford knew of his political activities because he was good friends with an officer disciplined by Edward Carroll (when Edward was a commissioner) and who was also a cousin to JoAnn Kelly. Even if true, the Court fails to see how this link logically leads to the conclusion that Blatchford knew of Carroll's political campaigning in 2005. These remote ties are simply not enough to reasonably infer that Blatchford knew about Carroll's protected speech in 2005. *See Consolino*, 872 F.3d at 830; *Harper*, 687 F.3d at 306. Nor would the timing of any of these events give rise to an inference that Defendants knew of Carroll's protected activities, or acted because of those activities, because none of the alleged retaliatory acts against him occurred close on the heels of the protected expression—they occurred several years after. *See Bless*, 9 F.4th at 572 ("[F]or a suspicious-timing argument alone to give rise to an inference of causation, the plaintiff must demonstrate that 'an adverse employment action follows close on the heels of protected expression, and the plaintiff [must] show that the person who decided to impose the adverse action knew of the protected conduct.'") (quoting *Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001)).

The only individual for whom there is any evidence of knowledge of Carroll's political activities is Scott Burkhardt, who served as the Clerk of the City of Oak Forest from 1997 until 2016. Burkhardt attended a political event in 1999 where Carroll's father emceed a fundraising event for Pat Gordon, the incumbent mayor whom JoAnn Kelly challenged in the 2005 mayoral

race, at which he spoke in favor of Gordon. Although there is no evidence that Carroll himself attended this event, it is at least plausible to infer that Burkhardt might have deduced Carroll's political affiliations based on what he knew about Carroll's father. But there is no evidence that Burkhardt contributed to any decisions made with respect to Carroll during his employment with the City.

To be sure, direct evidence, in cases where a defendant's motivation is at issue, is rarely present because it "essentially requires an admission by the decision maker that his actions were based on the prohibited animus." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (internal quotation marks omitted). But Carroll must present more than circumstantial inferences tied together only by speculative connections. Instead, however, he relies exclusively on unproven assertions that Defendants would have known about his political activity because his affiliations were generally well-known within the department or because certain positions within Oak Forest government were elected jobs or appointed by the mayor. This is not enough. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (because summary judgment is the "put up or shut up" moment in the lawsuit, a mere "hunch about the defendant's motives" is insufficient to survive at this stage); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and '[d]iscrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by affidavits speculating about the defendant's motives.'"). Having determined that Carroll fails to present sufficient evidence that Defendants were aware of his protected speech, the Court grants summary judgment in favor of Defendants on Carroll's First Amendment retaliation claim.

## II. Illinois Whistleblower Act

Next, the Court turns to Carroll's whistleblower claim. The IWA protects employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers. Section 20.1 of the IWA states that "any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ICLS 174/20.1.

Defendants argue that the Court should grant summary judgment because: (1) Carroll cannot establish that he reported a violation of Illinois law; (2) he cannot show a materially adverse act; (3) Defendants are immune under the Local Governmental and Governmental Employees Tort Immunity Act (hereafter "Tort Immunity Act"); and (4) Carroll's claim is barred by the one-year statute of limitations under the Tort Immunity Act.

To start, the Court disagrees that Carroll cannot show that he reported, or attempted to report, a violation or that he cannot show a materially adverse act. Carroll testified during his deposition that he attempted to raise issues regarding the Board's failure to hold exams and create updated eligibility lists with at least one of the deputy fire chiefs in 2014 and that Deputy Chief Griffin threatened to fire him if he raised the issue further. At minimum, this suffices to show that Carroll attempted to raise a violation of law and a materially adverse action. Indeed, 740 ILCS 174/20.2 states that "an employer may not threaten any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act."

Nevertheless, the Court agrees that Carroll's IWA claim is barred by the applicable statute of limitations. Under the Tort Immunity Act, actions against public employers are subject to a one-year limitations period. 745 ILCS 10/8–101(a); *Padilla v. County of Cook*, 100 F. Supp. 2d 1145, 1147 (N.D. Ill. 2000). The limitations period begins to run on the date of the plaintiff's injury. *See Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75 (2003).

Defendants argue that Carroll's claim is barred by the Tort Immunity Act because he tried to report issues with the eligibility list in 2012 and 2014. Carroll responds that his date of injury is 2018—when he was not allowed to take the firefighter exam—and that his claim is timely based on the continuing tort theory.

Under the "continuing tort" or "continuing violation" theory, where the tort involves continuous or repeated injurious behavior, by the same actor and of a similar nature, the limitations period is held in abeyance and the plaintiff's cause of action does not accrue until the date the final injury occurs or the tortious acts cease. *Feltmeier*, 207 Ill. 2d at 278. A continuing tort is not established by ongoing injuries resulting from one discreet act, *see Hyon Waste Management Services, Inc. v. City of Chicago*, 214 Ill. App. 3d 757, 762 (1991)), but instead involves viewing the defendant's conduct as a series of tortious acts amounting to a continuous whole. *Feltmeier*, 207 Ill. 2d at 279.

The validity of the continuing violation rule depends upon the cause of action alleged and applies "where the pattern, course, and accumulation of the defendant's acts are relevant to the cause of action." *Kidney Cancer Ass'n v. North Shore Cmty. Bank & Trust Co.*, 373 Ill. App. 3d 396, 405, 869 N.E.2d 186 (2007) (citing *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 348-49, 770 N.E.2d 177 (2002)). Where a complaint alleges discrete conduct providing a basis for a cause of action, courts do not apply the continuing tort theory. *Id.*

Here, the Court finds that the continuing tort theory does not apply. Carroll generally claims that he "regularly inquired about the department's eligibility list and testing." Pl.'s Additional SOF ¶ 20, ECF No. 119. But aside from this purported fact, which is too vague to sustain Carroll's claim in the absence of any specific information such as when and to whom these inquiries were made, the record only identifies two instances where Carroll arguably raised issues with the eligibility lists. The first was in May of 2012 when he discussed the issue with Fire Chief Lipinsky and suggested the eligibility list was no longer active. The second was in 2014, he discussed the issue with Deputy Chief Griffin.

Assuming these conversations took place as Carroll claims, they occurred with two different individuals—neither of which were involved in the decision to exclude Carroll from the 2018 exam. Each incident, therefore, constitutes discrete conduct forming the basis for separate causes of action. *See Elue v. City of Chicago*, Case No. 16-cv-9564, 2017 WL 2653082, at *10 (N.D. Ill. June 20, 2017) (holding that courts do not apply continuing tort rule to discrete conduct providing a basis for a cause of action). As such, Carroll's IWA claim cannot rest on these events because they were not of a similar nature or with the same actors that caused Carroll an injury within the limitations period. *See Feltmeier*, 207 Ill. 2d at 278; *Spaulding*, 186 F. Supp. at 919; *see also Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, Case No. 03-cv-8717, 2007 WL 1308523, at *15 (N.D. Ill. Apr. 27, 2007) (rejecting the plaintiff's "attempt[ ] to invoke the continuing violation rule by improperly lumping different acts by different actors at varying time periods"). Any claims, therefore, based on the 2012 or 2014 conversations are untimely and barred by the statute of limitations.

Moreover, with respect to the 2018 exam, Carroll does not show that the adverse action, *i.e.*, denying him the opportunity to sit for the exam, was connected to his attempt to disclose

19

public corruption or wrongdoing. Instead, he claims that the decision to bar him from taking the exam was based on his political affiliations. But, as the Court outlined above, Carroll has not identified sufficient evidence to infer that Defendants knew of his 2005 campaigning activities. Accordingly, the Court finds that Carroll's IWA claim is barred by the statute of limitations, to the extent it is based on pre-2018 events, and lacks sufficient evidentiary support to survive summary judgment, to the extent it is based on the 2018 test. The Court grants summary judgment in favor of Defendants on this count as well.

## Conclusion

The Court grants Defendants' motion for summary judgment [105]. Plaintiff's motion for leave to file a surreply [129] is granted. Judgment is entered in favor of Defendants. Civil case terminated.

**SO ORDERED.**                                **ENTERED: March 30, 2023**

_____
**HON. JORGE ALONSO**
**United States District Judge**